UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

LATOYA HODGE,

                    Plaintiff,                    Civil Action No. 14-11276
                                                     Honorable Laurie J. Michelson
           v.                             Magistrate Judge David R. Grand

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 11]**

Plaintiff Latoya Hodge ("Hodge") brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

I.   **RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Hodge is not disabled under the Act. Accordingly, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [11] be GRANTED, Hodge's motion [10] be DENIED and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

## II.  REPORT

### A.  Procedural History

On October 13, 2011, Hodge protectively filed for DIB and SSI [Tr. 116-29], alleging an onset date of February 26, 2011. [Tr. 148]. This application was denied on January 13, 2012. [Tr. 74-91]. Hodge filed a timely request for administrative hearing, which was held on November 1, 2012, before ALJ Regina L. Sleater. [Tr. 31-73]. Hodge, who was represented by attorney Aaron Lemmens, testified, as did vocational expert Sue Lyons. [*Id.*]. On December 12, 2012, the ALJ issued a written decision finding that Hodge was not disabled during the relevant period. [Tr. 16-30]. On January 29, 2014, the Appeals Council denied review. [Tr. 1-6]. Hodge filed for judicial review of the final decision on March 28, 2014. [1].

### B.  Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled

> regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

*1.     Hodge's Testimony and Subjective Reports*

Hodge reported in a November 3, 2011 disability report that the condition rendering her disabled was a "pinched nerve in back." [Tr. 148]. She testified that the source of her pain was a February 26, 2011 slip and fall outside of a store. [Tr. 42-43]. She stated that this injury "affect[s] my ability to work, by the pains and muscle spasms, legs going numb." [Tr. 156]. She reported that she is 5'11" tall and weighed 242 pounds as of her November 2011 report. [Tr. 148].

Regarding her activities of daily living, Hodge reported that her day consists of taking her son to school, going to doctor appointments, watching television, and getting help from family members in dealing with household chores. [Tr. 157]. She stated that she experiences difficulty with dressing herself when her "body spasms," and sometimes requires help to sit down and stand up from the toilet, but experiences no limitations in her ability to bathe, feed herself, or

comb her hair. [Tr. 157]. She is able to prepare sandwiches by herself, but requires assistance to craft full meals. [Tr. 158]. She can drive and walk, and does her own shopping, though such trips can take several hours due to frequent stopping and resting. [Tr. 159]. Hodge reported taking numerous medications, with side effects including drowsiness and running to the bathroom. [Tr. 163].

Hodge testified that she experiences pain in her leg and back intermittently, for approximately 30 to 45 minutes at a time, and rated the pain at seven out of ten. [Tr. 48]. She also testified that her pain on occasion flares such that her back tightens up "stiff as a board." [Tr. 48-49]. She stated that she can perform small tasks around the house for approximately 20 minutes at a time. [Tr. 49]. She told the ALJ that she can sit or stand for 30 to 45 minutes at a time before leg numbness sets in, and can walk approximately one-half mile before resting. [Tr. 50]. She also testified that she keeps busy with activities relating to her children's schooling, and is "always running" to keep up with her children's schedules. [Tr. 51]. She testified to sleeping between three and four hours per night. [Tr. 53].

### 2. *Medical Evidence*

The Court has thoroughly reviewed Hodge's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *Vocational Expert's Testimony*

The VE characterized Hodge's prior work as a telephone solicitor as a semi-skilled, sedentary position. [Tr. 57]. She characterized Hodge's home health aide and group home technician work as semi-skilled, with medium exertion. [*Id*.]. She found that Hodge's work as a cashier, deli worker, and machine operator were unskilled, with light exertion. [*Id*., Tr. 64]. Her

4

work as a dish washer was found to be unskilled, with medium exertion. [Tr. 65].

The ALJ asked the VE to imagine a claimant of Hodge's age, education, and work experience, and asked seven hypothetical questions[1], applying increasingly restrictive conditions of employment. [Tr. 66-72]. Most notably, the ALJ inquired as to the jobs available to someone who is restricted to performing light work, but who is able to lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday, with normal rest periods, who can frequently engage in most postural activities, but can only occasionally bend, twist, or move at the waist, who can never climb ladders, ropes, and/or scaffolding, but must avoid concentrated exposure to hazards, including unprotected heights and open heavy machinery. [Tr. 66-67]. The VE testified that the hypothetical individual would be capable of performing the work of a telephone solicitor (6,000 jobs in the State of Michigan), bench assembler (4,500 jobs); bench or packager (2,500 jobs). [Tr. 68].

## D.     The ALJ's Findings

Following the five-step sequential analysis, the ALJ found Hodge not disabled under the Act. At Step One, the ALJ found that Hodge had not engaged in substantial gainful activity since her alleged onset date, February 26, 2011. [Tr. 21]. At Step Two, the ALJ found that Hodge has the following severe impairments: degenerative disc disease of the lumbar spine and obesity. [Tr. 21-22]. At Step Three, the ALJ found that Hodge does not have an impairment or combination of impairments that met or medically equaled a listed impairment. [Tr. 19-21].

Next, the ALJ assessed Hodge's residual functional capacity ("RFC"), finding her capable of light work as defined in 20 CFR 416.967(b), except with the restrictions detailed in

---

[1] Hodge erroneously asserts that the ALJ "asked the VE to assume one hypothetical." [10 at 7].

5

her questions to the VE, *supra*. [Tr. 22-25]. At Step Four the ALJ found that Hodge was capable of performing her past work as a telephone solicitor as generally and actually performed, and was thus not disabled. [Tr. 25]. The ALJ then made an alternative Step Five finding that Hodge was not disabled because, despite the limitations included in her RFC, the Medical-Vocational Rules direct a finding of not disabled, and because she was still able to perform the jobs of bench assembler and packager. [Tr. 25-26].

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility

of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

   1.   *The ALJ Did Not Improperly Assess Hodge's Credibility or Evaluate the Medical Records and Opinions*

Hodge asserts (in a heading in her brief) that the ALJ erred by "improperly assessing [her] credibility, and by failing to properly evaluate the medical records and opinions of evidence and, thereby, formed an inaccurate hypothetical that did not accurately portray [her] impairments." [10 at 10]. Hodge's arguments lack merit.

The Court notes that Hodge does not explain with any particularity whatsoever which medical records or opinions the ALJ purportedly "fail[ed] to properly evaluate." [*Id*.]. Rather,

Hodge merely cites to her own testimony and simply concludes that "[d]ue to the fact that [she] has had numerous severe impairments, it seems unlikely, and rather flawed, to find, as the ALJ did in Hypo 1, that she has the residual functional capacity to perform light work…" [10 at 11]. But this speculative assertion is not a proper legal argument, as it essentially asks the Court to ignore the analysis that is required after a Step 2 finding is made that the claimant suffers from a severe impairment. Hodge has thus waived any challenges she has to the ALJ's determination in this regard.[2] *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted).

Regarding her credibility, Hodge asserts that "[t]here are no specific findings as to why the ALJ chose to ignore Ms. Hodge's testimony of her impairments and limiting effects of those impairments, and contrary to medical evidence, posed a hypothetical that vastly ignored Ms. Hodge's true limitations and abilities." [10 at 9]. But again, Hodge improperly offers only her own testimony, and seemingly ignores the ALJ's discussion of her credibility. [Tr. 23]. Hodge's argument misses the mark because the ALJ had a duty to consider her testimony in the light of other available evidence. [10 at 7-10]. Indeed, even where there is "objective medical evidence

---

[2] Even on the merits, Hodge's argument should be rejected. Contrary to Hodge's bald assertion, the ALJ evenly discussed the pertinent medical evidence. [Tr. 24]. In doing so the ALJ appropriately found that, "[I]n the aggregate, the various medical records referenced herein corroborate one another and are not inconsistent with [Hodge's RFC as determined by the ALJ]…" [*Id.*]. The ALJ's finding in this regard is supported by substantial evidence. [*E.g.*, Tr. 180 (medication makes muscle spasms better); Tr. 199 (Negative EMG study of the lower extremities and lumber paraspinals for lumbar radiculopathies); Tr. 229 (x-rays negative); Tr. 232 (mostly normal findings of vertebrae); Tr. 235 (no significant symptoms from Hodge's fall other than "some lingering back pain"); Tr. 238 (normal musculoskeletal evaluation and normal range of motion); Tr. 267 (found to have normal gait, and ability to "undergo exercise testing and/or participate in exercise program"); Tr. 308, 322, 329 (normal images with no evidence of lumbosacral radiculopathy, myopathy, or peripheral neuropathy); Tr. 332 (normal exam of back and lower extremities).

of an underlying medical condition ... an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir.2003).

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of her symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §416.929.

Hodge has presented no valid reason for disturbing the ALJ's credibility determination. Nor does the Court find one in its review of the record. In finding Hodge less than fully credible, the ALJ noted that Hodge worked for several months following her alleged onset date,[3] that she

---

[3] The ALJ's reference to this piece of evidence is meaningful in two respects. First, as the Sixth Circuit has held, "[a]ny work done during a period of claimed disability may show a claimant can engage in substantial gainful activity." *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir.1988)

admits to performing a wide range of daily activities including handling meals, laundry, grocery shopping, cleaning, and ironing, that she volunteers at her church, supervises teenagers at the park, walks daily with her child, and that several records in her medical transcripts point to exaggeration of symptoms. [Tr. 23]. Hodge does not dispute the ALJ's analysis of her activities, which are all valid considerations with respect to her credibility. *See* 20 C.F.R. §416.929(c)(3)(i) (an ALJ may consider a claimant's activities of daily living in evaluating credibility); *see also Walters*, 127 F.3d at 532 (an ALJ may consider household and social activities in evaluating the claimant's assertion of pain). The Court also finds that the ALJ's reference to records suggesting an exaggeration of symptoms is accurate. [*E.g.*, Tr. 180 (expressed pain out of proportion with clinical findings); Tr. 253 (Hodge complained of back pain which occurred "while she was hanging some curtains while standing on a couch" – activity which is clearly inconsistent with her professed level of functional limitations); Tr. 270 (noting that despite stating that she could stand for only 15 minutes, Hodge performed 40 minutes of standing exercises during her session without requesting a break).

As noted above, the ALJ also considered the objective medical evidence in detail, and appropriately found that no doctor established restrictions or diagnosed a disease which would be incompatible with the RFC. [Tr. 24]. Hodge does not point to any medical evidence which contradicts this conclusion, but instead simply asserts without further discussion that it is "contrary to the medical evidence." [10 at 9]. Again, that is not a properly supported legal argument, and the Court finds no reason to disturb the ALJ's credibility analysis.

---

(citing 20 C.F.R. §§ 404.1571, 404.1520). Further, the regulations provide, "[e]ven if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did...." 20 C.F.R. § 404.1571; *see also* 20 C.F.R. § 404.1512(b) (listing "your efforts at work" as relevant evidence for consideration). Second, Hodge testified that she stopped performing this work not because she was unable to handle it physically (or otherwise), but because the office where she was working closed down. [Tr. 40].

2. *Ability to Perform Past Work*

Hodge argues that the ALJ "erred as a matter of law in determining that Ms. Hodge could return to her past relevant work." [10 at 7]. It is true that the ALJ erred with respect to this matter, but not for the reasons identified by Hodge. The problem with the ALJ's evaluation of whether Hodge could perform her past relevant work is that the "work" the ALJ was comparing her abilities against does not qualify as "past relevant work."

It appears that the ALJ erred by characterizing Hodge's telephone solicitor work as "past relevant work." [Tr. 25]. "Past relevant work" is defined as "work that you have done within the past 15 years, ***that was substantial gainful activity***, and that lasted long enough for you to learn to do it." 20 C.F.R. 1560(b)(1) (emphasis added). The ALJ recognized that Hodge had not engaged in substantial gainful activity ("SGA") since her alleged onset date, thus her work as a telephone solicitor between August 2011 and November 2011 was not SGA and did not meet the definition of past relevant work. [Tr. 21, 38, 149]. Consequently, the Commissioner cannot rely on the ALJ's conclusion that Hodge is capable of returning to her past work as a telephone solicitor to find that she is not disabled. As discussed in the next section, however, this error is harmless, and does not require remand because the ALJ properly found that Hodge is capable of performing other work in the national economy.

3. *Alternate Step Five Finding*

The ALJ's error with regard to Hodge's past relevant work is harmless because the ALJ made two alternate Step Five findings, at least one of which is supported by substantial evidence.[4] [Tr. 25-26]. At Step Five, the ALJ found that "considering the claimant's age,

---

[4] Because the Court finds that the ALJ's alternate finding that "considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform," [Tr. 26], is

11

education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform." [Tr. 26]. The ALJ properly sought testimony from the VE to support this conclusion, who testified that a hypothetical person with Hodge's RFC would be able to perform the positions of bench assembler (4,500 jobs in the state of Michigan) and packager (2,500 jobs). [Tr. 68-69].

The Sixth Circuit has regularly found that regionally available positions ranging from between 125 and 2500 constitutes a "significant number" of jobs. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 375 (6th Cir. 2006); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988).

To the extent Hodge challenges the ALJ's finding in this regard, it can be best understood as an attack on the adequacy of the ALJ's RFC and related hypothetical asked of the VE. Yet that argument lacks merit as the RFC is supported by substantial evidence, and, as discussed above, the ALJ properly evaluated Hodge's subjective reports of pain. The only medical source statement in the record is State agency physician Dr. Edward Brophy's opinion that Hodge could perform a range of medium work with certain postural limitations. (Tr. 80-89). The ALJ went a step further and imposed certain additional limitations in formulating the actual RFC. Hodge identifies no particular medical evidence that undermines Dr. Brophy's opinion, and the ALJ's decision to rely on that opinion is supported by substantial evidence. *Johnson v. Comm'r of Soc. Sec.*, 2013 WL 812081, at *6 (E.D. Mich. Feb. 12, 2013) ("[T]he record does not include an opinion from a treating source, or an examining source, indicating that Plaintiff is disabled, or identifying limitations greater than those found by the state agency consultant. Without a

---

supported by substantial evidence, it declines to address the ALJ's other alternative finding that Hodge was not disabled based on the Medical-Vocational Guidelines ("grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2.

differing opinion, the ALJ was entitled to rely on the findings of the state agency consultant."), adopted, 2013 WL 811788 (Mar. 5, 2013).

Hodge also argues that the ALJ erred through her "complete disregard of the follow-up questions" posed by Hodge's counsel to the VE. [10 at 7]. These questions asked the VE to consider an individual who would miss more than two days a month on a continued basis, and someone who would be off task more than 10% off the time; the VE responded that either of those restrictions would preclude all employment. [Tr. 72]. However, Hodge does not point to any medical evidence supporting these restrictions, and the Court found none in the record. While the ALJ does not reference these hypothetical questions in her decision, she was not required to adopt Hodge's counsel's hypotheticals or the VE's responses to those questions. Instead, the ALJ was "required to incorporate only those limitations [she] accepted as credible" in the hypotheticals. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Because the ALJ's RFC and related hypothetical question to the VE fairly encompassed Hodge's limitations, the ALJ's decision was supported by substantial evidence. *See Ealy*, 594 F.3d at 516; *Morrow v. Comm'r of Soc. Sec.*, No. 13-11913, 2014 WL 1908284, at *8 (E.D. Mich. May 13, 2014) (holding that an ALJ did not improperly delegate his fact-finding responsibilities to the VE because he "adequately explained why he believed [the claimant] was capable of the full range of light work after detailing the record evidence in his narrative"); *Powers v. Comm'r of Soc. Sec.*, No. 13-10575, 2014 WL 861541, at *6 (E.D. Mich. Mar. 5, 2014) (rejecting the same delegation argument made by Hodge's counsel); *Lopez v. Comm'r of Soc. Sec.*, No. 13-10732, 2013 WL 6409959, at *7 (E.D. Mich. Dec. 9, 2013) (same).

### III.     CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Hodge's Motion for Summary Judgment **[10]** be **DENIED**, the Commissioner's Motion **[11]** be **GRANTED**, and that this case be **AFFIRMED**.

Dated: March 30, 2015                                                s/David R. Grand
Ann Arbor, Michigan                                                 DAVID R. GRAND
                                                                                 United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2015.

                                                                                 s/Eddrey O. Butts
                                                                                 EDDREY O. BUTTS
                                                                                 Case Manager